Your Honor, John Cullen, C-U-L-L-E-N, for the appellant. First, I want to thank the Court and Mr. Rolnik for their forbearance. Twice this was set for oral argument and twice it had to be continued because of my health, and I appreciate that. And I know it was a tremendous inconvenience to the Court. I'd like to start by briefly stating that it is and has always been our position that the City and County of San Francisco has a policy of discrimination against permanently injured firefighters. That existed in the year of 1999, which was the year in which this claim was filed. It existed before 1999 and exists now. The policy which existed and which we have attempted to argue specifically was or has been articulated in 42 U.S.C. 12.1.12b that prohibits discrimination against employees with disabilities by limiting, segregating, or classifying them in a way that adversely affects their opportunities or status because of their disabilities. The record is replete with evidence that in the year of 1999 and before, the City and County of San Francisco created a permanent injured employee list, a list which they had on their computers, which they did not want to call up and make part of their limited duty list for individuals who were able to recover and return to duty, and who they were restrained from referring to that list because of the ramifications they felt it would have. And that was that they did not want individuals with disabilities applying to become members of the San Francisco Fire Department. In the year of 1999, two specific acts happened. And I don't know how this, I mean, we've addressed it all the way through. But in the year of 1999, Mr. Shea was transferred from Treasure Island to the fitness center in violations of his seniority rights, which was a status which he no longer enjoyed because of his injury. And also in that year, it commenced when he started being denied the equal pay for the work which he was performing at the fitness center. It was those two elements that took place within this period of time within the one year prior to. The individuals who are permanently disabled have no future within the Fire Department. They are unable to progress within the Fire Department because of the standards and the policies of the San Francisco Fire Department, which existed in 1999 and exist even today. The evidence presented is really not disputed that he was not, he did not get all of his justifiable pay. Their argument simply is it was a clerical error. And I submit to the Court that there was ample evidence to support the fact that this is part of a policy to discriminate against the permanently disabled. But was there evidence that none of the people on that list of disabled workers received administrative pay? There was evidence of declarations submitted, yes, by individuals. Now, whether they are on that list or not, we don't know because that was never supplied to us, that list. But these were permanently disabled firefighters who we submitted declarations from that indicated they did not receive the administrative pay. What is administrative pay exactly? There's two categories of pay which individuals can receive. Administrative pay is when you are assigned to an administrative position, which is a 40-hour-a-week position. In lieu of that, you can receive assignment holiday premium pay if you are in a 40-hour-a-week, in a position staffed seven days a week. And I gather that was your client's position, wasn't it? It was, correct. So he would be entitled to his holiday pay, but not necessarily the administrative override. Is that correct? But the important distinction is it's holiday premium pay. And as we have set out in the evidence which has been presented here, on the pay stubs, there's provision for legal holiday pay, which is pay that is presented to all individuals. Then there's premiums for either the administrative pay or this holiday premium pay. And the holiday premium pay is what he was entitled to working the 40-hour-a-week, seven days that was staffed. And as I understand the record, he got it some of the time, but not consistently. Exactly correct. But what is the evidence that it was because of his disability? Well, the only evidence would be the history of what had been taking place up until that time. As the evidence had been pointed out, when Firefighter Shea attempted to first get transferred over to Treasure Island, there was a hostile confrontation between Shea and Gamble. Gamble was hostile against that, and even though that's denied by the city, that was Shea's testimony and his position. Gamble also was of the opinion that he does not know why permanently disabled firefighters remain with the city and county of San Francisco. It's a burden upon them, and they don't know what to do with them. There has never been any effort made to establish a policy of what to do with these individuals. That was his mindset. He, prior to the year of 1999, had drafted a policy for permanent, for limited duty. And in that policy, it stated if you were unable to return to the full duties of a firefighter, you were not entitled to the limited duty program. Ergo, you would have to either be retired or sent elsewhere. That was his frame of mind and his thinking. I guess I don't. The district court said that the city and county contends that under the memorandum of understanding, the chief of the department has discretion to designate certain administrative positions for administrative assignment pay, and the plaintiff's position in the fitness center was not so designated. Now, I take it you dispute that. Not only do we dispute that, there's never been any evidence presented that that, in fact, is true. They indicate, well, the chief has a right to assess certain administrative pay, yet no list of those jobs which were designated for administrative pay has ever been provided, and we don't even know if it's ever existed. So, yes, one, we dispute that, but, two, we agree that as long as he's on the seven-day-a-week, he's entitled to the holiday premium pay as opposed to the administrative pay. There's no dispute you're not entitled to both. There was the administrative, excuse me, it was the holiday premium pay, which he was denied, which he did not get, and there's no testimony that the chief has any discretion over that. Well, there is a declaration that this was due to the, sometimes he got holiday and premium pay, and sometimes he didn't, and there were some clerical errors. There was a, there was a declaration. Quite right. Yeah. It's what their legitimate business reason is. Yeah, that's an affidavit. Now, what is there that says this is the pattern, look at this, that refutes it? The evidence which I've just made reference to in that time frame. Where do I find it here? Okay. That evidence that we have made reference to is Chief Gamble's deposition at page 168. Chief Gamble's limited. Is that in the excerpts? Yes, that's in the excerpts of the record. Chief Gamble's limited duty policy on. Can you give me some page numbers? Page 137. Chief Gamble's limited duty policy, was that ever adopted by the fire department? No. That was not adopted. It remains. Okay. So it's just somebody's idea. It was the man that was in charge's idea, and we agree that was never adopted, but it certainly tells us what his frame of mind and what his thinking was in administering this program. And he, I don't think Chief Gamble denies the fact that he felt that the permanent disabled firefighters were a burden. He didn't know what to do with them. There was no plan as to what to do with them, and they were treated in such a manner. In fact, they were denied their various, he has testified also, and we have that in here, they were denied, quote, plumb positions because they were fearful that most of the firefighters that were at greater seniority were males and that they may find that to be discriminatory. So they were denied, quote, plumb positions because they were disabled. Do you have a question? You're not claiming that there's any particular position that you were denied by virtue of the disability, I take it. That's not part of his claim here. Well, I am. I am pointing out that he was denied his position at Treasure Island in September of 1999. Okay. That's, yes. When he was moved over to the fitness center at the whims of the fire department in violation of his seniority rights. So I would submit that I don't think there could be any dispute that the policy of the San Francisco Fire Department is discriminatory and in violation of the American with Disabilities Act. Okay. Thank you. Good morning. May I please the Court. My name is Jonathan Rolnick. I'm a deputy city attorney, and I'm here representing the city in this hearing. Your Honors, this is a simple and straightforward employment discrimination case. The issue before the Court is whether the appellant, Mr. Shea, has presented sufficient and substantial evidence to avoid summary judgment. The district court determined that he had not, and the city continues to contend that he failed to meet his burden to prevent, to present specific and substantial evidence that the reason he didn't get administrative assignment pay or holiday premium pay during any paid period was not motivated by the fact that he was disabled. That is the only. So I'm asking you, does this mean that he didn't get some of his holiday premium pay? Yes. That's in the declaration of Ms. Yee, who was the payroll clerk, who pulled the payroll records and showed that for a period between when he was first assigned to the fitness center, and then for the following year, that there were a number of pay periods in which he did not receive the holiday premium pay. There were also a number of weeks in which he received either the holiday premium pay or regular holiday pay for a Monday, such as a July 4th weekend, when persons in some sort of administrative assignment or nonfire suppression position would have a holiday. After that point, I believe if you check Ms. Yee's declaration, and I can give you the site for that, Mr. Shea received either holiday pay or holiday premium pay in every payroll period. And, in fact, there were a number of payroll periods where they overpaid him. For example, where there was a holiday, he received both the holiday pay for the Monday off, as well as the holiday premium pay for the same pay period. And the Yee declaration is at, I'm sorry, I don't have that. That's in the excerpts of record. But the Yee declaration demonstrates, and there's a spreadsheet there that lists by payroll period, the regular pay, holiday pay and premium pay that Mr. Shea received over the period in question. And this issue is the only issue before this Court. This is the second time this case has been up on appeal. This Court decided the last time the case was up on appeal that any issues that Mr. Shea had with respect to his claim that he was subjected to unlawful harassment, that he was denied seniority or promotions or a particular assignment or position were all time barred. The Court sent it back down to the district court for a single, to look at a single issue, and that single issue was whether or not Mr. Shea was denied administrative assignment pay because of his disability. How much money are we talking about here? I believe we're talking about several hundred and perhaps as much as a thousand dollars. Now, the city has presented its legitimate nondiscriminatory reasons for what happened here, and Mr. Shea has not presented, the appellant has not presented any evidence that shows that the motivation, the intent of the department to deprive him of pay  because of his disability. There's no evidence that Ms. Yee or anyone in payroll was aware of his status. There is evidence in the record in the declaration of Deputy Chief of Administration Asaro, Binny Singh, who was the department's human resources manager at the time, and there is evidence in the record that there were some people who were on the light duty list who received administrative assignment pay, and there were others who did not. They also presented evidence in their declaration that there were firefighters who were not on light duty, who were working in some sort of administrative assignment, who received administrative assignment pay and did not. And through their declarations, the city established that under the MOU, the chief of the department has the discretion to decide which administrative assignments get administrative assignment pay. And under the MOU, those who are working in non-suppression jobs, other administrative jobs not designated by the chief as administrative assignment pays, will receive holiday pay and holiday premium pay for those pay periods in which they don't get to have a holiday off. There is simply no evidence here of pretext or that the legitimate nondiscriminatory reasons the city's offered for its actions were, in fact, false. All that Mr. Shea has presented is broad, conclusory statements about people's status as disabled or the fact that they didn't get something, but he's offered no underlying facts to lay the foundation that this had anything to do with anyone's status as an individual under the Americans with Disabilities Act. That's what the district court said. Correct. The district court was right. Exactly. In your view. Correct. Since 1981, Mr. Shea has been accommodated by the city. Since 1981, he's been unable to perform any of the fire suppression duties of a firefighter, but the city has continued to find work for him within the department, has continued to pay him at a full firefighter's rate, and he's continued to earn over that period of time all of the benefits that a firefighter receives. I take it there's no dispute that they did keep a list of disabled firefighters? They did keep a list, and that list contained those who were permanently disabled and those who had temporary disabilities because they were injured on the job. And the purpose of that was to figure out how we were going to accommodate these people and work them through the system and find productive work for them to do. And without that list, it would be very difficult to do that. The city submits that there is no question that the district court's ruling here was correct, that there's no evidence to overcome the legitimate nondiscriminatory reasons, and this Court should affirm the district court's ruling. Thank you. Any questions? Thank you, counsel. Thank you, Your Honor. Mr. Add, anything? Just a couple of issues, if I might, Your Honor. Thank you. The provisions for the holiday pay, the holiday of premium pay, are in the excerpt from the record. And I think if the Court reads those and looks at those, you'll see that there is no distinction, excuse me, that there is a distinction between legal holiday pay and premium pay. So when their argument is, well, if you got legal holiday pay, he wasn't entitled to a premium pay, that just simply is not correct. And by reading those documents, you'll be able to see that. When the city talks about having accommodated the injured firefighter, the city simply talks about giving him a position, which is a dead-end position, and stripping him of his status as a firefighter. There is no right to advancement because of the goals which have been set up. You have to be able to perform all the duties of a firefighter in order to be promoted. There is no status as a firefighter. You do not own a position as all other firefighters do. So this is not a reasonable accommodation. There has been no attempt at all to make room for the permanently disabled firefighter within the department to advance within the department to perform those jobs which they are capable of doing. Would you require this Court to have the city man firetrucks with disabled firefighters? I think, first of all, that obviously would depend upon the disability. But I think, Your Honor, what would That would depend upon their disability? It would depend upon the type of disability. But I think the more important question is that fire suppression is only part of what the San Francisco Fire Department does. I understand that. I understand that. But to be a fireman in the ordinary sense that normal people think of firemen, they're involved in fire suppression, not education, not cleaning trucks or anything like that. They're in fire suppression, right? Correct. Okay. All right. But along with that, there is a tremendous amount of other personnel within the department that does not get involved with fire suppression. They're supportive of that. I would submit it. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is United States v. Holland.
judges: Schroeder, Canby, Duffy